UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANGELIKA NABI,

        Plaintiff,

v.

PROVIDENT LIFE AND CASUALTY
INSURANCE COMPANY,

        Defendant.

**COMPLAINT**

**Case No.:** 23-cv-844

---

Plaintiff, Angelika Nabi, by and through her attorneys, Hagerty & Brady, for her Complaint in the above-entitled action, alleges as follows, upon information and belief:

## PARTIES

1.    Plaintiff Angelika Nabi ("Plaintiff") is an individual residing in Amherst, New York.

2.    Defendant Provident Life and Casualty Insurance Company ("Defendant") is a foreign corporation with a principal place of business located in Chattanooga, Tennessee.

1

## JURISDICTION AND VENUE

3. This is an action seeking damages for wrongful denial of disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA").

4. This Court has subject matter jurisdiction over this lawsuit pursuant to federal question jurisdiction, 28 U.S.C. §1331, because, under 29 U.S.C. § 1132(e)(1), district courts of the United States have exclusive jurisdiction of civil actions brought under 29 U.S.C. § 1132.

5. Venue is proper in the Western District of New York, because, under 29 U.S.C. § 1132(e)(2), the action may be brought where the breach, i.e. failing to pay disability benefits, took place.

## FACTUAL ALLEGATIONS

### The Policy

6. Plaintiff obtained a policy of disability benefits, policy number 36-335-6006984 with Defendant, commencing on May 1, 1989 ("the Policy").

7. The Policy is a welfare benefit plan administered by Defendant and governed by ERISA.

8. The Policy was renewed annually, through at least 2022.

9. Plaintiff timely paid her premiums annually.

10.     The Policy provides disability income insurance to the policy holder upon the occurrence of "total disability."

11.     Total disability is defined in the Policy as:

Total Disability or totally disabled before age 55 or before benefits have been paid for ten years for a period of disability, whichever is later, means that due to injuries or Sickness:
1. you are not able to perform the substantial and material duties of your occupation: and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.
After you attain age 55 or after benefits have been paid for ten years for a period of disability, whichever is later, Total Disability or totally disabled means that due to Injuries or Sickness:
1. you are not able to engage in any gainful occupation in which you might reasonably be expected to engage because of education, training, or experience, with due regard to your vocation and earning at the start of disability; and
2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

12.     The Policy further provides that a basic monthly benefit will be paid for the period of total disability, or for as long as the applicable maximum benefit period, whichever is shorter. The maximum benefit periods are defined such that, in pertinent part, if the policyholder becomes totally disabled prior to the age of 65, the benefits will be paid until she reaches the age of 65, while if the policy holder becomes totally disabled at the age of 65 or above (but before age 75), the maximum benefit period will be 24 months.

3

13. The monthly benefit amount is adjusted annually. Upon information and belief, the monthly benefit amount in the periods applicable herein is $2,270.

14. The Policy also provides that after the policyholder becomes totally disabled, any premiums which became due and were paid during the period of disability will be refunded, and that payment of premiums thereafter shall be waived for as long as the period of disability lasts.

15. The Policy states that a written notice of claim must be given within 20 days after a covered loss starts or as soon as reasonably possible.

## Plaintiff's Brain Tumor And Resulting Disability

16. On or about July of 2003, Plaintiff began experiencing a variety of alarming symptoms, including seizures, loss of consciousness, loss of balance, and inability to walk.

17. In August of 2003, at the age of 51, Plaintiff was diagnosed with Glioblastoma Multiforme (GBM), a fast-growing and aggressive brain tumor.

18. GBM is a devastating brain cancer that often results in death in six months or less. Most people with GBM survive for less than two years from diagnosis.

19. GBM has resulted in the sudden illness and death of prominent figures such as Senator John McCain, Joseph "Beau" Biden III, and Senator Edward M. Kennedy.

20. GBM is notoriously difficult to treat. The disease is characterized by treatment-resistant tumor cells as well as invasive branches of the tumor which evade surgical removal. Although radiation treatments, chemotherapy, and surgery can be and are all used to fight GMB, the efficacy of those treatments is buffeted by the pernicious nature of the cancer as well as its sensitive location within the brain.

21. The five-year survival rate for patients diagnosed with GMB is less than 10% (measured from the date of diagnosis).

22. In short, a diagnosis of GMB is a diagnosis of terminal illness with an exceptionally grim prognosis.

23. It is widely understood that even without direct cognitive impairment, a diagnosis of a terminal illness often causes shock, depression, anxiety, and panic. These phycological reactions impair a patient's ability to carry out routine tasks, affect her personal relationships, and affect her memory.

24. The National Cancer Institute has recognized that, with regard to diagnoses of cancer in particular, it is common for patients to develop cancer-related posttraumatic stress at anytime from diagnosis to treatment and through possible recurrence.

25. Cancer-related posttraumatic stress is characterized by, among other symptoms, being unable to think clearly, difficulty with memory, and avoiding stressful memories.

5

26. In the words of the National Cancer Institute, "The cancer experience is more than one stressful event. Cancer may involve stressful events that repeat or continue over time."[1]

27. In other words, the stress of a cancer diagnosis can be so significant that a patient may continue to experience symptoms of post-traumatic stress for years, from diagnosis, through treatment, and after treatment.

28. Plaintiff's GMB is located in her right temporal lobe. The temporal lobe is a part of the brain that, among other things, is essential for memory-related processes.

29. After diagnosis with GMB, Plaintiff began immediate and invasive treatment. Plaintiff underwent brain surgery four times, beginning in 2003. By 2009, Plaintiff had undergone three surgeries on her brain since diagnosis. Shortly after her first brain surgery, Plaintiff underwent radiation treatment, followed by chemotherapy. Plaintiff underwent chemotherapy regularly from 2003 through 2019.

30. Within months of diagnosis of GMB, Plaintiff became reliant on the use of a wheelchair, as the brain cancer so radically affected her sense of balance that she was no longer able to ambulate independently.

31. Plaintiff beat the odds and survived past five years from diagnosis.

---

[1] https://www.cancer.gov/about-cancer/coping/survivorship/new-normal/ptsd-pdq#:~:text=have%20these%20symptoms.-,PTS%20can%20occur%20at%20any%20point%20during%20the%20cancer%20journey,also%20have%20post%2Dtraumatic%20stress.

6

32. When not in active treatment, Plaintiff continued attempting to work as much as physically possibly as an office manager.

33. In December of 2009, at the age of 57, Plaintiff was no longer able to carry out the tasks of office manager, and left employment entirely. Plaintiff was totally disabled within the meaning of the Policy.

34. Since her diagnosis with GMB, Plaintiff has suffered repeated falls as a result of her impaired balance, leading to surgeries for a fractured shoulder and fractured knee. She has also undergone multiple surgeries to repair facial tissue rendered necrotic by radiation therapy. These surgeries were in addition to the four brain surgeries Plaintiff underwent to treat the GMB directly.

35. The GMB resulted in immediate and steady cognitive impairment, including impairment of Plaintiff's memory and ability to carry out activities of daily living.

36. Plaintiff has continued to beat the odds against GMB, and is still alive twenty years after diagnosis.

37. But the path of survival against an enemy such as GMB is harrowing. Plaintiff has been and continues to be severely impaired as a result of this pernicious brain cancer.

38. In 2020, Plaintiff developed hydrocephalus, which required the placement of a shunt in her brain. This led to further cognitive decline.

39. After Plaintiff's diagnosis with GMB, she was plunged from regular life into an all-consuming world of profound and increasing physical limitations, invasive and life-altering medical treatments, relentless appointments and testing, and alienation from her previous life and friends, all while staring down an impending death that was all but statistically guaranteed.

40. It is not an exaggeration to say Plaintiff's life became an exclusive and brutal fight for survival. The peripheral concerns of regular life: parties, vacations, sporting events, television shows, paperwork, all vanished into the background as she entered the blackened tunnel of aggressive cancer treatment.

41. No person, even without a brain tumor that directly afflicted her temporal lobe, could reasonably be expected to remember the details of her insurance policies in these circumstances, much less to submit a proof claim under that insurance policy "within 20 days" from becoming totally disabled as a result of such a devastating disease.

42. For its part, the Policy does not require that policyholders submit a claim within 20 days; it expressly allows claims to be submitted within 20 days "or as soon as reasonably possible."

43. The Policy also contemplates that certain beneficiaries will submit claims much longer—years after—becoming totally disabled, and that those claims will be paid. In its "Waiver of Premium" section, the Policy provides that a beneficiary will be refunded "any premiums which became due and were paid while you were totally

disabled." This section clearly contemplates that it may reasonably take beneficiaries years of being totally disabled before submitting claims.

44. Plaintiff, as a result of her cognitive impairment, as well as the psychological trauma of her terminal illness diagnosis and resulting treatments, did not submit a claim under the Policy as soon as she became totally disabled in December of 2009.

45. At that time, when Plaintiff was so entirely overcome by cognitive impairments, an inability to independently ambulate, and incontinence, that she could no longer carry out routine office tasks in her employment, Plaintiff was likewise too impaired to recognize, remember, and/or submit an insurance claim under the Policy. It was not reasonably possible for Plaintiff to submit an insurance claim under these physical and psychological circumstances.

46. In September of 2021, Plaintiff's husband discovered the Policy (for which Plaintiff had continued to pay premiums annually). Immediately, with her husband's help, Plaintiff submitted a claim.

47. On June 2, 2022, Defendant approved the claim only as beginning in September of 2021, but denied the vast majority of Plaintiff's claim (beginning in December of 2009) on the basis that Plaintiff failed to timely notify Defendant of her total disability.

48. Plaintiff appealed the decision of Defendant, and on August 1, 2022, Defendant affirmed its decision, writing that "[y]our husband has indicated that your

9

mental status prevented you from filing your claim sooner. There has been no information provided to date that supports that you had a medical condition that would render you unable to provide written notice of claim."

49. Defendant's decision beggars belief in light of Plaintiff's undisputed diagnosis of GMB and resulting impairments.

50. Plaintiff has exhausted her administrative remedies.

## FIRST CLAIM FOR RELIEF
**Wrongful Denial of Disability Benefits**

51. Plaintiff hereby realleges paragraphs 1 through 50 above as if fully set forth herein.

52. The Policy is governed by ERISA.

53. Under the Policy, a claim for disability benefits will be paid upon the policyholder becoming disabled and submitting notice as soon as "reasonably possible."

54. Reasonableness must be considered in light of the circumstances of the individual policyholder.

55. Given Plaintiff's undisputed diagnosis of GMB, which attacked her temporal lobe, her resulting cognitive impairment, the impairment resulting from her medical treatment, and well-recognized psychological effects of terminal illness diagnosis and treatment, in these circumstances Plaintiff gave Defendant notice as

soon as reasonably possible, i.e., as soon as Plaintiff's husband discovered the Policy in September 2021.

56. Plaintiff is therefore entitled to disability income under the Policy beginning on the date she became totally disabled, which is no later than December 2009.

57. Under the Policy, Plaintiff is also entitled to the refund of the premiums she paid during her period of disability.

58. Defendant's denial of Plaintiff's disability benefits was in contravention of the terms of the Policy, and Plaintiff is entitled to bring this action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to her under the terms of the Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that she be awarded:

(a) compensatory damages according to proof on her First Claim for Relief, estimated to be not less than $150,000 together with interest at the New York statutory rate of nine percent;

(b) all costs of suit herein;

(c) attorneys' fees according to proof and as provided by 29 U.S.C. § 1132(g); and,

(d) such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED:   August 16, 2023
         Buffalo, New York

                               **HAGERTY & BRADY**

                               */s/ Daniel J. Brady*
                               **Daniel J. Brady, Esq.**
                               **Michael A. Brady, Esq.**
                               Attorney for Plaintiff
                               69 Delaware Ave. Suite 1010
                               Buffalo, NY 14202
                               (716) 856-9443 office
                               (716) 856-0511 fax
                               dbrady@hagerty-brady.com