**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━

**ANGELIKA NABI,**

　　　　　　　　　　**Plaintiff,**

　　　　**-v-**　　　　　　　　　　　　　**1:23-CV-00844-HKS**

**PROVIDENT LIFE AND CASUALTY**
**INSURANCE COMPANY.,**

　　　　　　　　　　**Defendant.**

━━━━━━━━━━━━━━━━━━━━━━━━━

## <u>DECISION AND ORDER</u>

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings in this case, including entry of final judgment.  Dkt. #15.

Plaintiff Angelika Nabi ("Nabi") brings this action against defendant Provident Life and Casualty Insurance Company ("Provident") alleging a wrongful denial of disability benefits under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Currently before the Court are Provident's motion for judgment on the administrative record (Dkt. #25) and Nabi's motion for summary judgment (Dkt. #26).

## BACKGROUND[1]

### *Nabi Obtains Coverage Under the Provident Policy*

In 1978, Nabi began working at ENT Medical Associates, PC ("ENT") as an office administrator. Dkt. #26-1, p. 2; Dkt. #33-1, p. 3.[2] Nabi held that position until she stopped working completely in December of 2009. *Id.*

Through her employment, Nabi obtained a policy of disability benefits with Provident, commencing on May 1, 1989. *Id.* The policy is a welfare benefit plan governed by ERISA. Dkt. #26-1, p. 3; Dkt. #33-1, p. 3. It provides disability income insurance to the policyholder upon the occurrence of "total disability." *Id.*

"Total disability" is defined, in relevant part, as when the employee, due to injury or sickness, is not able to perform the substantial and material duties of her occupation and is receiving appropriate care for that condition from a physician. Dkt. #26-1, pp. 3-4; Dkt. #33-1, p. 3.

The policy provides different maximum benefit periods depending on the age of the employee at the time she becomes totally disabled, but the parties agree that

---

[1] References to "AR" are to the Administrative Record for Nabi's claim, which is filed in five parts at Dkt. #29. For ease of reference, the Court cites the ECF-generated page numbers rather than the full file names used by the parties.

[2] ENT was Nabi's husband's medical practice. Dkt. #29-2, p. 488.

the monthly benefit amount for the periods in dispute in this matter is $2,270. Dkt. #26-1, p. 5; Dkt. #33-1, p. 4.[3]

In a provision titled "Notice of Claim," the policy states: "Written notice of claim must be given within 20 days after a covered loss starts **or as soon as reasonably possible**." Dkt. #29, p. 12; Dkt. #26-1, p. 5; Dkt. #33-1, p. 4 (emphasis added).

The policy also states that, upon receipt of a notice of claim, Provident will send the policyholder claim forms for filing proof of loss. Dkt. #29, p. 12. The policyholder then must provide proof of loss within 90 days, unless it was not reasonably possible for the policyholder to do so, in which case the proof of loss must be furnished no later than one year after the 90 days unless the policyholder is legally unable to do so. Dkt. #29, pp. 12-13.

Finally, the policy states that the policyholder may not commence legal action against Provident "after three years from the time proof of loss is required." Dkt. #29, p. 13.

---

[3] The policy also provides that after the policyholder has been totally disabled for 90 days during a period of disability, any premiums which were due and paid by the policyholder will be refunded, and payment of premiums during the period of total disability is waived. Dkt. #29, p. 9.

***Nabi is Diagnosed with Brain Cancer in 2003***

In August of 2003, at the age of 51[4], Nabi was diagnosed with Glioblastoma Multiforme ("GBM"), a fast-growing and aggressive brain tumor. Dkt. #26-1, p. 6; Dkt. #33-1, p. 4. Nabi was treated for her GBM by Dr. Gregory J. Castiglia ("Dr. Castiglia"), a board-certified neurosurgeon. Castiglia Decl., Dkt. #26-2, ¶ 1.[5]

GBM is notoriously difficult to treat. Castiglia Decl., Dkt. #26-2, ¶ 6. Even with immediate and aggressive treatment, most patients with GBM die within two years. *Id.*, ¶ 8. Of the hundreds of patients that Dr. Castiglia has treated for GBM, only two or three have survived beyond five years. *Id.*, ¶ 9.

Because of the nature of GBM, surgical removal of the tumor will not eliminate the disease, and radiation and chemotherapy are necessary. *Id.*, ¶¶11-13. However, chemotherapy is limited in its effectiveness, so high doses of radiation are used to stop the growth of new tumor cells. *Id.*, ¶¶ 13-14.

Such high doses of radiation to the brain, however, can lead to cognitive problems, memory problems, losses in executive function, and fatigue. *Id.*, ¶ 15.

Dr. Castiglia began aggressive treatment for Nabi immediately upon her diagnosis, including surgeries, chemotherapy, and radiation. *Id.*, ¶ 17.

---

[4] Nabi's was born in 1952. Dkt. #29, p. 17.

[5] As discussed in the analysis that follows, the Court concludes that the declaration of Dr. Castiglia may be admitted as evidence in this matter.

***Nabi Files a Claim for Disability Benefits in 2021***

On September 8, 2021, Nabi filed a notice of claim under the Provident policy with the help of her husband after he discovered the policy. Dkt. #26-1, p. 12; Dkt. #33-1, p. 7. Nabi listed August 2003 as the date of disability and stated that her last day of work was January 1, 2004. Dkt. #29-2, p. 224.

It is not disputed that employees of Provident's corporate parent, Unum Group ("Unum"), administered and made the benefits determinations on Nabi's claim. Dkt. #26-1, p. 13; Dkt. #33-1, p. 8.

On April 12, 2022, Nabi submitted to Unum an Individual Disability Claim Form, again listing August 2003 as her disability onset date and stating that she was incapacitated; using a wheelchair; not able to walk or keep balance; and had loss of memory and hearing. Dkt. #29-2, pp. 41-53. She also stated that she was unable to care for herself and had undergone four brain surgeries, three facial surgeries, and two knee surgeries. *Id.*

Dr. Castiglia submitted an Attending Physician's Statement dated April 25, 2022, listing Nabi's diagnoses of GBM, Communicating Hydrocephalus, and Malignant Neoplasm of the Brain. Dkt. #29-2, pp. 88-90. He also stated that Nabi had undergone surgery on August 20, 2020, for the insertion of a right ventriculoperitoneal shunt. *Id.* He listed a variety of physical restrictions and limitations from the date of that surgery. *Id.*

On April 25 and 27, 2022, Unum wrote Nabi to acknowledge receipt of her claim for benefits, including the Attending Physician's Statement, her Individual Statement, and unrestricted medical authorizations completed by Nabi. Unum also stated that a medical review of her claim would be conducted. Dkt. #26-1, p. 13; Dkt. #33-1, p. 8; Dkt. #29-2, pp. 61-62, 82-83.

On April 29, 2022, Unum Benefit Specialist Courtney Holcomb ("Holcomb") called Nabi to discuss her claim. Dkt. #29-2, pp. 93-95. Nabi stated that her last day worked was January 1, 2004 and that was the claimed date of disability. Holcomb asked Nabi why she had not filed a claim sooner, and Nabi stated that "she just forgot about the insurance" and her "husband reminded her." Dkt. #29-2, p. 94.

Holcomb reviewed the information regarding the surgeries, chemotherapy, and radiation that Nabi had undergone, and Nabi affirmed that information but stated that she could not remember all the dates. *Id.*

Holcomb noted that Nabi had reported on her claim form that she was incapacitated; in a wheelchair; unable to stand, walk, or keep her balance; had loss of memory and hearing; was incontinent; could not sit too long; and could not drive. *Id.* Nabi stated that that had been her status since 2003. Nabi also stated that she was "pretty much homebound." *Id.*

In her report of this call, Holcomb stated:

> [Nabi] sounded very tired throughout the call and talked softly and slowly. She asked me to repeat myself numerous times and to talk slowly. [She] seemed to have a hard time answering my questions. When she did provide answers, they were very brief and not detailed and it seemed like she could not recall much during our call. The call was kept very brief as it seemed like [Nabi] was having a progressively harder time as the call went on.

Dkt. #29-2, p. 95.

On May 4, 2022, an Unum Vocational Representative, Robert J. Rodecker ("Rodecker"), stated in an internal claims review forum: "The [employee's] diagnosis is Glioblastoma. **We need to determine if it was not reasonably possible for [her] to provide us with more timely notice of claim**." Dkt. #29-2, p. 175 (emphasis added).

For unknown reasons, Nabi herself completed the questionnaire directed to ENT Medical Associates regarding her employment. Dkt. #29-2, pp. 181-182. On this form, Nabi stated that she was hired on July 1, 1978, worked full-time until September 2008, and worked part-time until December 2009. Dkt. #29-2, p. 181.

On May 5, 2022, Holcomb again called Nabi and left a voicemail, which she summarized in her notes:

> I left a voicemail message for [Nabi] advising I was first calling to confirm receipt of the employment questionnaire she completed. We were requesting it from the practice to obtain independent verification and we were hoping the office manager that took over from her may be able to complete it or someone else in the office so that it would be independent. Advised we did also have some other questions for her to help clarify some things and she seemed to have some difficulty recalling some details when we talked last week so I was

wondering if maybe her husband could be on the phone when she called back to help answer questions if needed. Or if she feels she can answer, just her is fine too. Whichever she is more comfortable with.

Dkt. #29-2, p. 183.

That same day, Holcomb sent Nabi a letter summarizing the evidence that had been submitted in support of her claim and stating that "we are unable to make a decision without additional time and information." Dkt. #29-2, pp. 185-187. Holcomb also noted the delayed notice of Nabi's claim and requested additional information:

- Please provide us with a written explanation as to why you did not file the claim sooner.

- Please provide responses to the following:
  Do you require full time assistance from a caregiver? If so, as of when?
  Were you in a coma for any periods of time?
  Did you permanently lose any mental capacity to make decisions, care for yourself, etc.? If so, as of when?
  You reported that you stopped working as an office manager. Please advise if you have worked in any other job/occupation in any capacity from 2009 to present?
  Do you have a Power of Attorney (POA)? If yes, please provide a copy.
  Have you been able to drive since diagnosis? If not, when did you stop?

Dkt. #29-2, p. 187.

On May 20, 2022, Nabi wrote to Unum in response to the above questions. Dkt. #29-2, pp. 197-198. She explained that when she was diagnosed with GBM in 2003, she was told she had only 9-12 months to live and her "mind at that time was not thinking of applying for disability insurance," she was "just thinking of survival." Dkt. #29-2, p. 197.

She further advised Unum of her four brain surgeries following her diagnosis; extensive chemotherapy and radiation; radiation-caused necrosis which required removal of her right temple bone; loss of balance which caused falls and fractures requiring surgery; incontinence; and severe cognitive disability, memory loss and seizures. Dkt. #29-2, pp. 198-198. She also advised that her husband takes care of her and is her power of attorney. *Id.* Finally, she stated that she did not work or drive after 2009, and that her husband helped her prepare the letter. *Id.*; Dkt. #26-1, pp. 14-15; Dkt. #33-1, p. 8.

In the questionnaire sent to ENT, completed by ENT's then-Office Manager on May 25, 2022, ENT confirmed that Nabi's last day of employment was December 30, 2009. Dkt. #29-2, pp. 210-211.

On May 27, 2022, an Unum claims employee wrote in-house counsel regarding Nabi's claim, stating that "we intend to deny the earlier period of time" and Nabi had not stated "any significant reasons why she could not have filed a claim earlier." Dkt. #29-4, p. 1.[6]

On May 31, 2022, in an internal communication among Unum's claims employees, Unum stated:

> Both [Nabi] and [ENT] have confirmed that [Nabi] continued working in some capacity through December 2009. Since she was able to continue working through 2009, it appears that

---

[6] The two pages in the AR cited by the parties, presumably containing the same document, appear to be blacked out. Dkt. #29-2, pp. 214-215.

> she could have notified us of her disability and provided proof
> of loss earlier than she did. **She was not legally**
> **incapacitated or otherwise unable to provide us with**
> **notice of claim as required by the policy.** Based on this, it
> appears reasonable to evaluate the claim using a beginning
> date of 09/08/2021, which is when [she] provided notice of
> claim.

Dkt. #29-2, p. 219 (emphasis added).

Unum also noted that Nabi would not have been entitled to renewal of the

policy after she turned 65 if she was not actively working, unless it was due to being totally

disabled. *Id*. Unum thus stated that it was requesting medical records from Nabi's doctors

to determine if she met the definition of total disability prior to the renewal date of August

1, 2017. Dkt. #29-2, pp. 219-220.

Two days later, on June 2, 2022, Holcomb sent Nabi a letter informing her

that Unum would not consider her claim earlier than September 8, 2021. Dkt. #29-2, pp.

223-227. The letter also stated: "Since you were able to continue working through 2009,

it appears you could have notified us of your disability and provided proof of loss earlier

than you did. You were not legally incapacitated or otherwise unable to provide us with

notice of claim as required by the policy." Dkt. #29-2, p. 225.

On June 6, 2022, Unum sent Nabi a letter advising her that it required more

time to make a decision on her claim and would be requesting more medical records. Dkt.

#29-2, pp. 455-457; Dkt. #26-1, p. 17; Dkt. #33-1, p. 9.

On June 15, 2022, Nabi's husband, Dr. Sayeed Nabi, wrote a letter to Holcomb stating that her June 2 letter was "absurd" and that Nabi had undergone "several surgeries and treatments rendering her mental health and cognitive functions depleted." Dkt. #29-2, p. 488. He further stated that Nabi "became totally disabled as of December 2009 and not since September 2021," which was "well documented in the medical records." *Id.*

On June 21, 2022, Unum sent Nabi a letter acknowledging her husband's letter as an appeal. Dkt. #29-2, p. 495.

On June 24, 2022, Unum's claims reviewer, Matthew Roop ("Roop"), contacted in-house counsel:

> While we understand late notice is significant and NY is a strict late notice state, **looking for legal advice or case law if an insured had cognitive impairment or a disability that could have rendered her unable to file sooner. *Claims manual does site [sic] that we have to determine if the late notice was reasonable, factoring in the nature of the medical condition*.**

Dkt. #29-4, p. 3; Dkt. #26-1, p. 17; Dkt. #33-1, p. 9 (emphasis added).[7] Roop also noted that "No medical review has been performed on the file to date." *Id.*

On June 27, 2002, in-house counsel responded that unless Nabi "lacked the legal capacity to give notice of claim," then the late notice should not be excused. Dkt. #29-4, p. 4. He also noted that "it does not appear that a guardian or conservator had

---

[7] Again, the pages in the AR cited by the parties appear to be blacked out. Dkt. #29-2, pp. 496-497.

been appointed, or that claimant otherwise has been deemed mentally incompetent by relevant judicial authority." *Id.* He recommended that Unum obtain "more information about the insured's capacity over the last 18 years to determine whether she had the capacity to give notice of her claim" and determine whether her medical records show that she was "mentally incompetent." *Id.*

Meanwhile, on June 29, 2022, Unum's Lead Appeals Specialist, Melissa Walsh ("Walsh"), sent Nabi a letter regarding the appeal based on the letter to Unum from Nabi's husband. Dkt. #29-2, p. 499. Walsh asked: "Has there been a guardianship, conservatorship or other declaration regarding your mental capacity?" *Id.* Walsh also asked if Nabi could provide medical records or other information documenting Nabi's mental capacity from 2009 to the present, noting that Unum had only received records going back to 2016/2018. *Id.*

On July 8, 2022, Walsh spoke with Nabi's husband by telephone. Dkt. #29-2, p. 629. Walsh's notes suggest that the conversation was contentious: while Walsh stated that Unum did not have Nabi's medical records prior to 2016, her husband insisted that they had been sent. *Id.* Nabi's husband stated that the reason Nabi did not file a claim sooner was "memory loss," and that while she worked from 2003 to 2009, she "made mistakes" and he had to tell her to stop working. *Id.*

Walsh stated that if Dr. Nabi wanted to provide medical records "substantiating his claim that [Nabi] couldn't file sooner due to a memory issue" then

Walsh would look at that. *Id.* Nabi's husband began raising his voice, and Walsh ended the call stating that it was not productive. *Id.*

On July 20, 2022, Nabi's husband wrote a letter to Walsh following up on their telephone conversation. Dkt. #29-2, p. 650. He stated that he was Nabi's guardian and caretaker and had her power of attorney. *Id.* He further listed three hospitals and two doctors, stating: "You have the permission to contact the following agencies for any information regarding Angelika's health and care." *Id.* He added: "If Angelika's cognitive and memory [*sic*] was in place she would have applied for disability earlier without any doubt. Unfortunately she did not. She was fighting for her survival." *Id.*

On July 25, 2022, Judith Cohen, M.D., an Unum Medical Consultant, spoke by telephone with Nabi's attending physician, neurosurgeon Dr. Gregory Castiglia ("Dr. Castiglia"). Dkt. #29-2, pp. 661-663. Dr. Castiglia stated that Nabi was suffering the effects from radiation treatment for her GBM; that "a dementia has set in"; the biggest decline had been in the past 3-5 years; and, in 2009, she was "forgetful" and **"unable to work due to cognitive issues but was able to function at home".** Dkt. #29-2, p. 661 (emphasis added).

### *Unum Denies Nabi Disability Benefits Prior to September 8, 2021*

On July 27, 2022, Holcomb sent Nabi a letter stating that Unum had approved her claim for disability benefits, but only beginning September 8, 2021, the date of her notice, for a period of 24 months per the policy terms. Dkt. #29-2, pp. 676-679.

On August 1, 2022, Unum sent Nabi another letter stating that the appeal of the determined disability date of September 8, 2021—based on her husband's letter—was denied. Dkt. #29-2, pp. 692-695. It stated, in part: "[I]t does not appear that a guardian or conservator had been appointed, or that you otherwise had been deemed mentally incompetent by relevant judicial authority." Dkt. #29-2, p. 693.

The letter further stated that Unum was unable to obtain any of Nabi's medical records prior to approximately 2016. *Id.* While Unum acknowledged the July 20, 2022 letter from Nabi's husband granting Unum permission to obtain Nabi's "medical records from all hospitals, facilities and providers" that treated Nabi from 2003 forward, Unum stated: "**We will not be requesting this information.**" Dkt. #29-2, p. 694 (emphasis added). Rather, Unum stated that Nabi's husband would have to provide such records. *Id.*

After Nabi's appeal of this decision was denied, and settlement efforts were unsuccessful, Unum sent Nabi's then-counsel a letter on December 1, 2022, affirming its denial of her appeal and advising of Nabi's rights under ERISA. Dkt. #29-2, pp. 750-751.

Under a section titled "To All New York Residents," this letter referenced the Provident policy provision stating that no legal action may be brought under the policy more than three years after proof of loss is required to be furnished. Dkt. #29-2, pp. 750-751. The letter then states: "**We have calculated that the last date your client may file**

**a legal action is June 2, 2025. This is 3 years from the date of The Benefit Center's June 2, 2022 decision letter.**" Dkt. #29-2, p. 751 (emphasis added).

### *Nabi Files This Lawsuit*

Nabi filed this action on August 16, 2023, alleging that, after her 2003 GMB diagnosis, she began immediate and invasive treatment, including radiation, chemotherapy, and, by 2009, she had undergone three brain surgeries. Dkt. #1, ¶ 29. She alleges that, by December 2009, she had become totally disabled and unable to work. Dkt. #1, ¶ 33.

Nabi further alleges that, due to the effects of her cancer and treatments, she was overcome with cognitive impairments and was too impaired to recognize, remember and/or submit an insurance claim under the policy. Dkt. #1, ¶ 45. She further alleges:

> Given Plaintiff's undisputed diagnosis of GMB, which attacked her temporal lobe, her resulting cognitive impairment, the impairment resulting from her medical treatment, and well-recognized psychological effects of terminal illness diagnosis and treatment, in these circumstances Plaintiff gave Defendant notice as soon as reasonably possible, i.e., as soon as Plaintiff's husband discovered the Policy in September 2021.

Dkt. #1, ¶ 55.

Nabi alleges that Provident wrongfully denied her benefits under the policy, and she seeks not less than $150,000 in compensatory damages, as well as attorneys' fees and costs. Dkt. #1, p. 11.

## DISCUSSION AND ANALYSIS

### Summary Judgment

#### *Procedural Posture of Current Motions*

Although Provident filed a motion for judgment on the administrative record, "the Federal Rules of Civil Procedure make no provision for such a mechanism." *Daniel v. UnumProvident Corp.*, 261 F. App'x 316, 317 (2d Cir. 2008) (citation omitted). Instead, the Court should treat the pending motions as cross-motions for summary judgment. *Id.*

Provident cites *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119 (2d Cir. 2003), for the proposition that a motion for judgment on the administrative record is appropriate and is essentially a "bench trial on the papers." Dkt. #25-3, p. 5, n.1. *Muller* does not support Provident's position.

First, the Court in *Muller* noted that such motions do not appear to be authorized under the Federal Rules of Civil Procedure, and that they are generally treated as motions for summary judgment. *Muller*, 341 F.3d at 124. Second, however, the Court noted that because the district court had already denied the insurer's motion for summary judgment on the issue of whether the plaintiff was disabled, it properly treated the insurer's motion as a paper "bench trial" to resolve the disputed facts. *Id.*

Here, the Court has not ruled on the threshold issue now before it—whether Nabi's claim for benefits for the period between 2009 and 2021 was timely. *See also Halo v. Yale Health Plan*, 546 F. App'x 2, 3 (2d Cir. 2013) (noting that motions for judgment on

the administrative record in ERISA cases are not authorized by Federal Rules of Civil Procedure; courts "thus typically treat such a motion as a request for summary judgment or a bench trial on the papers with the District Court acting as the finder of fact") (citation and internal quotation marks omitted); *Lijoi v. Continental Cas. Co.*, 414 F. Supp.2d 228, 237 (E.D.N.Y. 2006) (rejecting insurer's reliance on *Muller* and converting its motion for judgment on the administrative record to a motion for summary judgment).

Moreover, while the parties may consent to a "summary trial" or "bench trial on the papers," *Colin v. Morgan Stanley Med. Plan*, No-CV-9120-LTS-GWG, 2023 WL 6849130, at *10 (S.D.N.Y. Oct. 17, 2023), Nabi has not done so at this juncture. Dkt. #32, p. 7.

Therefore, "the Court must proceed in a traditional summary judgment posture, limit[ing] its inquiry to determining whether questions of fact exist for trial." *Colin*, 2023 WL 6849130, at *10 (citation and internal quotation marks omitted).

### ***Summary Judgment Standard***

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Kwasnik v. Oxford Health Ins., Inc.*, 22-CV-4767 (VEC), 2024 WL 3027924, *6 (S.D.N.Y. June 17, 2024) (citation and internal quotation marks omitted).

"When parties cross-move for summary judgment, the Court analyzes the motions separately, in each case construing the evidence in the light most favorable to the non-moving party." *Id.* "Although the Court must construe the facts in the light most favorable to the non-moving party, a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Id.*

### ERISA Standard of Review

Under ERISA, courts review a denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Kwasnik*, 2024 WL 3027924, at *6 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

Here, the parties agree that the de novo standard applies. Dkt. #25-3, p. 13; Dkt. #26-4, p. 10.

Upon de novo review, the district court "may render a determination on a claim without deferring to an administrator's evaluation of the evidence." *Macalou v. First Unum Life Ins.*, 22-cv-10439, 2024 WL 4867091, at *1 (S.D.N.Y. Nov. 22, 2024) (citation and internal quotation marks omitted). "The question for the Court is simply whether the decision to deny Plaintiff's claim was correct." *Id. See also McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 8140(RPP), 2013 WL 3975941, at *12 (S.D.N.Y. Aug. 5, 2013) ("In conducting a de novo review, the Court gives no deference to the insurer's interpretation

of the plan documents, its analysis of the medical record, or its conclusion regarding the merits of the plaintiff's benefits claim.") (citation omitted).

### Consideration of Evidence Outside the Administrative Record

In support of her motion for summary judgment, Nabi submitted a declaration from Dr. Castiglia. Dkt. #26-2. Provident argues that the Court may not consider this evidence because it is outside the administrative record. The Court disagrees.

"Generally, a court conducting a de novo review 'is limited to the record in front of the claims administrator.'" *McDonnell*, 2013 WL 3975941, at *12 (quoting *DeFelice v. Am. Int'l Life Assurance Co. of New York*, 112 F.3d 61, 67 (2d Cir. 1997)).

However, in *DeFelice*, the Second Circuit Court of Appeals held that a district court may, in its discretion, consider evidence outside the administrative record where "good cause" exists to do so. *DeFelice*, 112 F.3d at 66-67. The Court there found "good cause" because the administrator deciding plaintiff's benefits claims was conflicted, *i.e.,* it was responsible for deciding claims as well as paying for them. *Id.* at 66 ("The ERISA Appeals Committee which reviewed Ms. DeFelice's claim was comprised entirely of American employees—hardly a neutral decision-making body."). *See also Cohen v. Liberty Mut. Grp. Inc.*, 390 F. Supp.3d 363, 380 (S.D.N.Y. 2019) ("When the administrator of an ERISA benefits plan, such as an employer or an insurance company, both

determines whether an employee is eligible for benefits and pays benefits out of its own pocket, there is a conflict of interest.") (citation and internal quotation marks omitted).

The *DeFelice* Court also noted that there were procedural irregularities in the claims' administrator's decision process: the absence of appeal criteria and destruction of records. *DeFelice*, 112 F.3d at 66.

The Court then emphasized the role of the court in such cases:

> In such circumstances, courts *must* exercise fully their power to review *de novo* and to *be* substitute administrators. Plaintiffs are utterly helpless against the whim of the conflicted body's interpretation of the facts. The normal scope of limited "*de novo*" review is inappropriate where the fairness of the ERISA appeals process cannot be established using only the record before the administrator.

*Id.* Further, "the plaintiff need not demonstrate that the conflict caused her actual prejudice in order for the court to consider the conflict to be 'good cause.'" *Id.* at 67.

In *Lochner v. Unum Life Ins. Co. of Am.*, 389 F.3d 288 (2d Cir. 2004), the Court clarified *DeFelice* and held that a conflict of interest will not ordinarily *per se* constitute "good cause," rather it generally must be accompanied by procedural flaws. *Id.* at 294-96. The Court noted, however, that "[i]n so finding, we do not conclude that a finding of a conflicted administrator, standing alone, can never constitute good cause." *Id.* at 296. The Court then held that the district court did not abuse its discretion in admitting, during a bench trial, evidence outside the administrative record, including witness

testimony, the claim file, deposition transcripts, and other records and reports. *Id.* at 292, 296.[8]

Subsequently, in *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006), the Court held that the district court did not abuse its discretion in admitting and relying on the report of a doctor that had not been part of the administrative record. *Id.* at 441.

There, the plaintiff's alleged disability arose out of injuries he sustained in an automobile accident, and the doctor's report evaluating plaintiff's disability had been prepared in connection with a personal injury action related to the accident. *Id.* at 440.

The Court of Appeals rejected the insurer's argument that the report should not have been admitted:

> Where, as here, the plan administrator is not disinterested (*i.e.*, Hartford was both the plan administrator and insurer), the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause. . . . The district court, applying *DeFelice*, found that good cause existed for the admission of the report because it was highly probative and written by a disinterested party who had actually examined Paese, and because Paese was not at fault for the report's initial absence from the record. In light of these

---

[8] Provident egregiously misrepresents the holding in *Locher*. Dkt. #33, p. 10. Provident cites the case with the following parenthetical: "affirming exclusion of treating physician's affidavit where physician had opportunity to submit information during administrative review." *Id.* To the contrary, the Court upheld the district court's admission of a variety of evidence outside the administrative record, including testimony from plaintiff's treating physician and an expert medical witness. *Locher*, 389 F.3d at 296 ("Accordingly, the District Court did not err in considering evidence outside the administrative record.").

> entirely appropriate findings, we conclude that the district
> court did not abuse its discretion in admitting the report.

*Id.* at 441 (citation and internal quotation marks omitted). *See also Lijoi v. Continental Cas. Co.*, 414 F. Supp.2d 228, 239 (E.D.N.Y. 2006) ("Once the determination has been made to admit additional evidence into the *de novo* review, the Court is not temporally bound to evidence that either was, or should have been, available to the administrator at the time it made its claim determination.")

District courts within this Circuit have thus found good cause to admit evidence outside the administrative record where the administrator operated under a conflict of interest and other irregularities were at play. *See, e.g., McDonnell*, 2013 WL 3975941, at *12-13 (finding good cause where insurer had conflict of interest, and plaintiff argued that it applied improper criteria in assessing her illness and relied on in-house rather than independent medical professionals); *Lijoi*, 414 F. Supp.2d at 241 (permitting plaintiff to admit evidence outside administrative record where insurer was both reviewer and payor of claims, and plaintiff pointed to deficiencies in procedural clarity of claims process); *MacMillan v. Provident Mut. Life Ins. Co. of Philadelphia*, 32 F. Supp.2d 600, 614-15 (W.D.N.Y. 1999) (admitting, on cross-motions for summary judgment, affidavits from plaintiff's treating physician and another doctor who examined plaintiff during the claims process).

Under the above authorities, the Court concludes that good cause exists to admit the declaration of Dr. Castiglia.

First, it is undisputed that Provident—through its parent Unum—was responsible for both evaluating and paying Nabi's disability benefits claim and therefore was under a conflict of interest. Dkt. #26-1, p. 13; Dkt. #33-1, p. 8.

Second, the Court finds that procedural irregularities call into question the fairness and clarity of the decision-making process as to Nabi's claim.

On May 27, 2022, Unum indicated, internally, an intent to deny Nabi's claim prior to September 8, 2021, notwithstanding that it had not yet received her medical records or questioned her doctors about the cognitive disability and memory loss she had described in a letter she submitted to Unum seven days prior.

Six days later, Unum issued its decision to deny Nabi benefits prior to September 8, 2021. Dkt. #29-2, pp. 223-227.

On June 15, 2022, Nabi's husband wrote to Unum, stating that Nabi "underwent several surgeries and treatments rendering her mental health and cognitive functions depleted" and—importantly—that she became totally disabled as of December 2009. Dkt. #29-2, p. 488.

On June 24, 2022, while Unum's decision was on internal appeal, a claims reviewer called to the attention of in-house counsel that Unum's claims manual stated, in accord with the policy's notice provision, that the insurer needed to determine if Nabi was

reasonably unable to give notice earlier due to cognitive impairment or disability, "factoring in the nature of the medical condition." Dkt. #29-4. He also noted that no medical review had yet been performed on Nabi's file. *Id.*

In-house counsel responded with concepts regarding legal capacity and guardianships—not irrelevant, but a higher bar than the "reasonableness" standard in the policy. Counsel nonetheless stated that Unum should obtain more information about Nabi's capacity to file a claim "over the last 18 years." Dkt. #29-4, p. 4. However, as explained below, it appears that Unum never did so.

In the appeal process, Unum communicated with Nabi's husband, who again explained that memory loss was the reason his wife had not filed a claim sooner. Dkt. #29-2, p. 629. Unum stated that it did not have Nabi's medical records prior to 2016, and Nabi's husband, who had her power of attorney, sent Unum a letter listing three hospitals and two doctors where Nabi had treated, giving Unum permission to obtain his wife's information from them. Dkt. #29-2, p. 650.

However, Unum—*after it denied Nabi's appeal regarding the date of disability*—stated that it would not be requesting those records. Dkt. #29-2, p. 694.

Meanwhile, on July 25, 2022—while Nabi's appeal was still pending—a Unum medical consultant spoke with Dr. Castiglia who stated that Nabi was suffering the effects from radiation treatment for her GBM; that "a dementia has set in"; the biggest

decline had been in the past 3-5 years; and, in 2009, she was "forgetful" and **"unable to work due to cognitive issues but was able to function at home".**" Dkt. #29-2, p. 661 (emphasis added).

It does not appear, and Unum does not dispute, that this medical consultant, herself a doctor, did not ask Dr. Castiglia to clarify these responses. What did he mean by "able to function at home"? If the "biggest decline" occurred in the past 3-5 years, what decline had occurred previously? More importantly, the consultant did not ask Dr. Castiglia whether, given that cognitive issues rendered Nabi unable to work in 2009, did she then also lack the cognitive functioning to file a claim for disability benefits?

Finally, in denying Nabi's appeal, Unum—in a letter authored by Walsh— stated that Nabi was claiming disability "beginning in August 2003," but Nabi's husband had clarified that she was claiming total disability as of December 2009. Dkt. #29-2, pp. 692-695. In fact, in a letter Walsh had written to Nabi just over a month before, she asked: "Do you have medical records you can provide, or any other information, documenting your mental capacity from 2009 (the time you ceased working part-time) to the present . . .?" Dkt. #29-2, p. 499.

This disjunction was prejudicial because Unum then relied on the fact that Nabi continued working between 2003 and 2009 as a basis to conclude that she could have given notice of her claim sooner. Dkt. #29-2, p. 693 ("As you were able to continue working in some capacity through 2009, it appears you could have notified us of your

impairments earlier than you did."). But by claiming total disability as of December 2009, Nabi had no obligation to file a claim before that date.

It thus appears that either: (1) there was inadequate communication or coordination among the Unum employees involved in the claims process; (2) Unum had simply decided, given the significant lateness of the claim, that the delay could not have been reasonable and thus decided not to seek information relevant to that issue; or (3) both.

In any event, "[t]hese deficiencies in procedural clarity are certainly as extensive as those on which the court found 'good cause' in *DeFelice* and *Locher*, and justify a wider inquiry by this Court to insure a comprehensive and impartial review of [Nabi's] claim." *Lijoi*, 414 F. Supp.2d at 241.

The Court thus concludes that good cause exists to admit Dr. Castiglia's declaration which, as discussed below, speaks to the central issue in this case.

### Dr. Castiglia is not an Expert Witness

Provident also argues that Dr. Castiglia's declaration should be excluded because his opinions constitute expert testimony, and he was not disclosed as an expert witness. Dkt. #33, pp. 7-8. This argument is without merit.

A treating physician may offer an opinion about a plaintiff's injuries "without being required to submit a written report under Rule 26 of the Federal Rules of Civil Procedure if the physician acquired that opinion through treatment of the plaintiff and is not otherwise a witness retained or specially employed to provide expert testimony." *Maxwell v. Becker*, No. 12-CV-00864S (F), 2015 WL 4872137, at *3 (W.D.N.Y. Aug. 13, 2015) (citations and internal quotation marks omitted).

"Accordingly, so long as a treating physician's testimony is based solely upon the physician's care and treatment of the patient, a treating physician can express an opinion regarding the cause of any medical condition presented in a patient, the diagnosis, [and] **the prognosis and the extent of the disability, if any, caused by the injury**." *Id.* (emphasis added).

Dr. Castiglia's declaration falls within this authority because his testimony is based on his treatment of Nabi, and he is not employed to provide expert testimony . Dkt. #26-2.

### Whether Nabi's Late Notice Was Reasonable

There is no doubt that the nearly twelve-year delay between Nabi's alleged disability-onset date and the filing of her claim is significant. However, given the above evidence, coupled with Dr. Castiglia's testimony, the Court concludes that genuine issues of material fact exist as to whether Nabi filed her claim "as soon as reasonably possible" such that both parties' motions for summary judgment should be denied.

Dr. Castiglia testified that exposing Nabi's brain to such high doses of radiation, over time, resulted in "radiation necrosis" of her brain, meaning that the radiation killed not only cancer cells, but also healthy cells in her brain. Castiglia Decl., ¶ 18.

He further testified that, as a result, Nabi "has had a longstanding mental processing problem because of these treatments." Castiglia Decl., ¶ 19. Further, "[t]his problem became pronounced in the 2007-2009 time frame and was the reason she had to stop working." *Id.*

Dr. Castiglia also explained:

The term for the type of brain function that Angelika has lost due to radiation necrosis is typically referred to as *executive function*. This means that she is certainly capable of some simple tasks, but in terms of her ability to process memories and information and solve problems, such as would be required to balance a checkbook or submit an insurance claim, that has been unfortunately very diminished in Angelika as a result of the radiation damage to her brain.

Castiglia Decl., ¶ 20.

Dr. Castiglia also explains that the long-term effects of drugs or radiation in GBM patients is not typically a focus during treatment because most patients succumb to the disease long before such side-effects manifest. Castiglia Decl., ¶ 22.

Finally, Dr. Castiglia testifies that Nabi lacked and still lacks the executive function capabilities that would be required to file an insurance claim following her treatment for GMB, and the idea that Nabi or any other patient who had suffered radiation necrosis of the brain would be able to file an insurance claim is not reasonable. Castiglia Decl., ¶¶ 28, 30.

In turn, Provident points to evidence in Nabi's medical records that might support its position that her delay in filing her claim was not reasonable due to cognition problems, but this merely reinforces the Court's conclusion that this issue is not properly determined on summary judgment. *See MacMillan*, 32 F. Supp.2d at 615 ("Although the medical evidence submitted by plaintiff is certainly adequate to defeat defendant's motion for summary judgment, I cannot find on the record before me that plaintiff has carried his burden for purposes of his own summary judgment motion."). *See also Ajnoha v. JC Penney Life Ins. Co.*, 480 F. Supp.2d 663, 672 (E.D.N.Y. 2007) (noting that whether an insurance claim was filed "as soon as reasonably possible" ordinarily creates issues of fact).

At this juncture, therefore, the proper course is for the matter to be set for a bench trial. *McDonnell*, 2013 WL 3975941, at *26; *MacMillan*, 32 F. Supp.2d at 616.

## Three-Year Limitation Period in the Provident Policy

Provident's final argument is that Nabi's claim in this matter is untimely under the policy's three-year limitations period. Dkt. #25-3, pp. 17-20. This, too, is without merit.

The policy provision in question states that the policyholder may not commence legal action against Provident more than three years from the time proof of loss is required. Dkt. #29, p. 13. Working backwards, proof of loss is not required until the insured files a claim. Dkt. #29, pp. 12-13.

Nabi filed her claim with Provident on September 8, 2021, and she subsequently filed proof of loss. Dkt. #26-1, p. 12; Dkt. #33-1, p. 7. This action was filed on August 16, 2023, less than three years later.

Indeed, in its final letter denying Nabi's claim, Unum itself calculated the contractual three-year limitations period as expiring on June 2, 2025. Dkt. #29-2, p. 751.

Nabi's claim is thus not untimely on this basis.

## CONCLUSION

Consistent with this Decision and Order, Provident's motion for judgment on the administrative record (Dkt. #25) and Nabi's motion for summary judgment (Dkt. #26) are denied.

**SO ORDERED.**

DATED:      Buffalo, New York

            June 30, 2025

                                                  **s/ H. Kenneth Schroeder, Jr.**
                                               **H. KENNETH SCHROEDER, JR.**
                                               **United States Magistrate Judge**